[No. 15188.   Department Two.   May 31, 1919.]

HOOD MANUFACTURING COMPANY, *Appellant,* v.
J. MATZGER *et al., Respondents.*[1]

LANDLORD AND TENANT (63) — IMPROVEMENTS — COST.   Where rental for a building was to be based on its cost, architect's services (although his plans and specifications were deviated from by mutual agreement) and the salary of an adult son who kept books and assisted in overseeing the work, are properly chargeable as a part of the costs of the building.

SAME (63).   In such a case, the cost of the building is not shown to be less than $6,500, from the fact that a contractor bid $5,300 on the main part of the building, where additional items brought the cost up to $7,000.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 26, 1918, upon findings favorable to the defendant, in an action for equitable relief, tried to the court.   Affirmed.

*Max Hardman,* for appellant.
*Revelle & Revelle,* for respondents.

HOLCOMB, J.—Respondents, J. Matzger and wife, entered into a written agreement and lease with appellant manufacturing company on April 2, 1917, by the terms of which respondents agreed to erect a building at the northwest corner of First avenue south and Horton street, in the city of Seattle, and lease the same to appellant for a period of ten years from the completion of the building.   It was further agreed that the amount of the monthly rental should be figured upon the basis of the cost of the building to respondents, that is, if the erection of the building cost respondents less than the sum of $6,500, the monthly rental payable by appellant was to be $125; in the event that the cost of the building should be more than $6,500, the

[1]Reported in 181 Pac. 863.

rental was to be $137.50 per month. Among certain other covenants contained in this lease, it is material to notice one which provided that the lessors gave the lessee an option (to be exercised by the lessee within two years from the date of the completion of the building) to purchase the property (realty and building) at the price of $22,000, payable $5,000 cash and the balance in 120 monthly payments of $141.66, with 6 per cent interest.

Thereafter Matzger and wife erected a building at the agreed site, and the appellant moved in and took possession thereof. On May 31, 1917, appellant wrote respondents, in part, as follows:

"Referring to the building which you have erected for us at the northwest corner of First Avenue South and Horton Street, this city, we wish to call attention to the fact that the building has not been erected by you as agreed upon, and is deficient in many respects, correction of some of which we are willing to waive, but we do insist that the following matters be corrected:"

Then follow eleven items of alleged necessary corrections, the whole concluding with a statement that appellant company presumes that the incompleted work such as wiring, plumbing etc. will be properly performed before respondents' men leave the work.

On June 20, 1917, appellant company again wrote respondents, in part, as follows:

"However, unless we hear from you to the contrary promptly, we will take it for granted that your letter of June 5th is intended as a refusal on your part to make good any of these defects that have been called to your attention, and we will proceed to take such steps to enforce our rights as may be necessary.

"Incidentally, we wish to advise you that we are not willing to accept your statement as to the cost of the building, and we demand that you at once furnish us

with an itemized statement showing in detail the cost of the various items involved in the construction of the building, supported by proper vouchers.''

The dispute, of which these letters are the obvious evidence, culminated in an action by appellant, setting up the lease and agreement and alleging that Matzger and wife had refused to account for the cost of the building; that the building had not cost more than the sum of $6,500; that the reasonable rental value of the building erected by the Matgers was less than the rental value of the building agreed to be erected by them in the sum of $35 per month; that the building erected was of a less value than the building agreed to be erected; and praying that the Matzgers be required to account for the cost of the building; that the court determine the amount of the rental to be paid on the actual valuation; and that the lease be reformed as to the option price of $22,000 at which appellant might purchase the property, changing to the sum of $18,500, and asking judgment for excess of rental already paid over the amount which the court should determine properly to be paid.

Trial in the lower court without a jury resulted in findings that the building had cost more than the sum of $6,500, but that it had not been erected according to the agreement, whereby the manufacturing company (appellant here) was damaged in the sum of $1,200, that sum representing what it would cost to install a floor in the working part of the building such as was called for by the plan, and distributed that amount through the one hundred and twenty months of the lease at the rate of $10 per month, making a rental to be paid in the sum of $127.50, and gave the plaintiff judgment for the sum of $120, representing the excess of $10 per month already paid for twelve months. The trial court refused to modify or reform the lease in

any particular, including the option price of $22,000 therein agreed on.

The crux of the whole matter is clearly the cost of the building, for that is made the basis of the monthly rental and is urged as a reason for the requested modification of the option price. The question as to the actual construction of the building differing from certain agreed plans is secondary even to this matter, such variance justifying, according to appellant manufacturing company, not the surrender of its lease, which it did not desire or attempt, but merely a modification of the rental terms. This difference—and it is agreed that there is a difference between the plan and the construction of this building—is but an angle of the larger question as to the initial cost of the building.

It is incontrovertible that the agreement between the parties contemplated the construction of a building as cheaply as possible, it having been estimated that a building such as appellant desired would cost about $8,000, and it being desired by both parties to bring the cost of the building down to $6,500, or as near thereto as possible, it was understood and agreed that second-hand material should be used in the construction of the building as far as practicable, and that changes should be made, and were made by agreement of the parties, to reduce the cost of the building. The architect who drew the plans drew them from a rough sketch prepared by appellant's president as to the kind of building desired for his purposes, and it was understood and agreed that a plan with specifications had to be presented to the city authorities in order to obtain a building permit, but that neither party understood or agreed that such plans and specifications were to be rigidly adhered to, but only followed in general outline. The original agreement between the parties, it

should be noted, had stipulated that the building should be constructed according to *"a sketch OK'd by"* appellant. Much contention is made against the payment of the bill for the architect's services, amounting to $450, which amount the respondents obligated themselves to pay. While it is true that the plans and specifications as submitted by the architect were substantially departed from, it is not true that the plans and specifications contemplated by the parties, based upon the "sketch as OK'd" by appellant, and according to which the architect's more comprehensive plans and specifications were made, were departed from. For this reason the architect's services chargeable to the owner are also chargeable to the lessee under the agreement. We have held that architect's services are even lienable against a building, and even though they may not have been strictly followed, they are nevertheless recoverable.

Another item of the cost of construction vigorously contested by appellant was that of the son of respondents, who was paid wages aggregating $225 for nine weeks work. It appears that the son kept the books, helped his father in negotiations with contractors concerning the letting of portions of the work, purchasing lumber, keeping the time of employees, overseeing the work and doing general clerical work. He was of full age and his parents were not entitled to his services. The lower court held that the wages of the son were properly chargeable to the cost of construction, and we see nothing in the record to show to the contrary.

The claim of J. Matzger, one of the respondents, for wages and car fare in the amount of $250, in overseeing the construction, was disallowed by the trial court, and therefore is not to be considered.

Various other items were allowed by the court which

we think properly entered into the cost of the building, and no just reason is shown to the contrary.

Appellant showed that a firm of contractors bid $5,300 to construct the building, arguing therefrom that $5,300 was properly the cost of construction of the building. This by no means follows, and moreover, this bid did not include plumbing, wiring, roofing and painting, which cost the respondents $1,217; this added to the bid would bring the total amount over $6,500. Also it did not include the sheet metal skylights and architect's fee, which would have made in all more than $7,000.

Upon an examination of the whole record, while at first blush we were inclined to the opinion that some of the items disallowed by the trial court to appellant and allowed to respondents as properly chargeable to the cost of construction should not have been allowed respondents but should have been deducted, we are now of the opinion that appellant did not sustain the burden of proof as to those items, and that the court was generous, rather than exactly just, in allowing $1,200 on account of defective flooring. The court found that the building cost in excess of $6,900, and while this may not be exactly correct, it is certainly correct that it cost in excess of $6,500. Unless it cost less than $6,500, the provision as to the rental of $125 per month could not apply, and the court's deduction and apportionment of the rent from the $1,200 damages allowed on the rental value to respondents awards substantial justice. There is no basis for the reformation of the lease. The findings of the trial court were based on conflicting evidence and will not be disturbed unless contrary to the great weight of evidence, and this we cannot find to be the case.

The judgment is affirmed.

PARKER, MOUNT, and FULLERTON, JJ., concur.